**KINGSLEY & KINGSLEY, APC**
ERIC B. KINGSLEY, Esq., Cal. Bar No. 185123
eric@kingsleykingsley.com
KELSEY M. SZAMET, Esq., Cal. Bar No. 260264
kelsey@kingsleykingsley.com
ARI J. STILLER, Esq. (SBN 294676)
ari@kingsleykingsley.com
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Telephone: (818) 990-8300
Fax: (818) 990-2903

**DAVTYAN LAW FIRM, INC.**
Emil Davtyan, Esq., Cal. Bar No. 299363
emil@davtyanlaw.com
880 E. Broadway
Glendale, CA 91205
(818) 875-2008, Fax (818) 722-3974

Attorneys for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| MARTIN MARTINEZ SOTO, an individual, on behalf of himself and others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>O'REILLY AUTO ENTERPRISES, LLC; and DOES 1 thru 50, inclusive,<br><br>DEFENDANTS. | CASE NO.  5:20-cv-00214-JGB-KK<br><br>[Case Assigned for All Purposes to Hon. Jesus G. Bernal]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      October 24, 2022<br>Time:      9:00 a.m.<br>Courtroom: 1 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 24, 2022 at 9:00 a.m. in Courtroom 1 of the above-entitled court, Plaintiff MARTIN MARTINEZ SOTO ("Plaintiff") will move the Court for an Order of Preliminary Approval of the "Joint Stipulation of Class Action Settlement and Release of Claims" ("Settlement" or "Settlement Agreement"), a copy of which is concurrently submitted as Exhibit 1 to the Declaration of Kelsey M. Szamet.

The Motion will be made on the grounds that the proposed Settlement is fair, adequate, reasonable, and in the best interest of the Class and the Parties.

The Motion will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Kelsey M. Szamet, the Settlement Agreement, all other papers and records on file in this action, and on such oral and documentary evidence as may be presented at the hearing on this Motion.

DATED: September 22, 2022         KINGSLEY & KINGSLEY, APC

By: /s/ Kelsey M. Szamet
    Kelsey M. Szamet

Attorney for Plaintiff
MARTIN MARTINEZ SOTO and the
Proposed Class

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................1

II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND.................1

    1.   Filing of the Complaint .................................................1

    2.   Mediation.....................................................................2

    3.   Preliminary Approval ...................................................3

III.  SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS ...................4

    1.   Monetary Recovery .....................................................4

    2.   The Release .................................................................5

    3.   The Settlement Mechanism and Administration...................6

IV.  THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF

    GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT........7

    1.   The Settlement Class Should be Certified ............................7

        a.    All Four FRCP 23(a) Criteria are Met. ......................8

        b.    The FRCP 23(b)(3) Criteria are Met..........................10

    2.   The Proposed Settlement is Fair, Just and Adequate. .........12

        a.    The Settlement is Fair. ...........................................13

        b.    The Settlement is Reasonable. ..................................17

        c.    The Settlement is Adequate. ....................................22

    3.   The Notice Adequately Informs Class Members of the Settlement

        and Their Rights Thereunder..........................................23

V.   CONCLUSION.........................................................................23

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acosta v. Equifax Info. Servs. LLC,*
   243 F.R.D. 377 (C.D. Cal. 2007)..........................................................................12

*Alberto v. GMRI, Inc.,*
   252 F.R.D. 652 (E.D. Cal. 2008)......................................................................7, 8

*Banga v. Equifax Info. Servs., LLC,*
   473 Fed. App'x 712 (9th Cir. 2012).....................................................................20

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ................................................................................... 13, 14

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ................................................................................22

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992).............................................................................7

*Collins v. Cargill Meat Solutions Corp.,*
   274 F.R.D. 294 (E.D. Cal. 2011).........................................................................6

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ..................................................................... passim

*Hesse v. Sprint Corp.,*
   598 F.3d 581 (9th Cir. 2010) ................................................................................5

*Hillson v. Kelly Services,*
   E.D. Mich. No. 2:15cv10803, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017) ... 20, 21

*In re Activision Securities Litigation,*
   723 F. Supp. 1373 (N.D. Cal. 1989)............................................................ 14, 15

*In re Omnivision Tech., Inc.,*
   559 F.Supp.2d 1036 (N.D. Cal. 2008).................................................................14

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*In re Pacific Enterprises Securities Litigation*,

47 F.3d 373 (9th Cir. 1995) ........................................................................15

*In re Wells Fargo Home Mortg. Overtime Pay Litigation*,

571 F.3d 953 (C.A.9 2009) .........................................................................11

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,

527 F. Supp.2d 1053 (N.D. Cal. 2007)........................................................11

*Knight v. Red Door Salons, Inc.*,

2009 WL 248367 (N.D. Cal. 2009) .............................................................15

*League of Martin v. City of Milwa*,

*ukee*, 588 F. Supp. 1004 (E.D. Wis. 1984)................................................16

*Linney v. Cellular Alaska P'ship*,

151 F.3d 1234 (9th Cir. 1998) ....................................................................22

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*

*Inc.,*

244 F.3d 1152 (9th Cir) ........................................................................ 11, 12

*Milbourne v. JRK Residential Am., LLC*,

No. 3:12CV861, 2016 WL 1071569 (E.D. Va. Mar. 15, 2016)...........................8

*Molski v. Gleich*,

318 F.3d 937 (9th Cir. 2003) ......................................................................12

*Moore v. Rite Aid Headquarters Corp.*,

No. 13–1515, 2015 WL 3444227 (E.D. Pa May 29, 2015) ..................................8

*Offices for Justice v. Civil Service Com'n*,

688 F.2d 615 (9th Cir. 1982) ................................................................. 21, 22

*Phillips Petroleum Co. v. Shutts*,

472 U.S. 797, (1985) ...................................................................................12

*Powers v. Eichen*,

229 F.3d 1249 (9th Cir. 2000) ....................................................................15

*Quintero v. Mulberry Thai Silks, Inc.*,

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7
(N.D. Cal. Oct. 22, 2008) ...................................................................................8

*Spokeo, Inc. v. Robins*,
(2016) 136 S.Ct. 1540.................................................................................. 17, 18

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ................................................................ 9, 13, 15

*TransUnion LLC v. Ramirez*,
(2021) 141 S.Ct. 2190.................................................................................. 18, 19

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ..........................................................................22

*Vincent v. Hughes Air West, Inc.*,
557 F.2d 759 (9th Cir. 1977) ..................................................................... 13, 14

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043  (9th Cir. 2002) ........................................................................16

*Wirt v. Bon-Ton Stores, Inc.*,
134 F. Supp.3d 852 (M.D. Pa. 2015) ...............................................................8

*Young v. Katz,*
447 F.2d 431 (5th Cir. 1971) ...........................................................................21

**State Cases**

*Koehl v. Verio,*
142 Cal. App. 4th 1313 (2006) .......................................................................17

**Federal Statutes**

15 U.S.C. § 1681 ...............................................................................................1

15 U.S.C. § 1681b .............................................................................................5

15 U.S.C. § 1681b(b)(2)(A)(i) .......................................................................2, 9

15 U.S.C. § 1681n .............................................................................................5

15 U.S.C. § 1681o .............................................................................................5

15 U.S.C. §§1681p(1) .......................................................................................8

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

15 U.S.C. §§1681p(2) ...................................................................................8

15 U.S.C. §1681b(b)(2)(A)(i) .......................................................................1

15 U.S.C. §1681b(b)(2)(A)(i)(2) ..................................................................1

15 U.S.C. §1681b(b)(2)(A)(ii) ......................................................................1

**State Statutes**

California Business and Professions Code § 17200 .....................................5

**Federal Rules**

Federal Rules of Civil Procedure Rule 1 ...................................................21

Federal Rules of Civil Procedure Rule 23(a)...............................................8

Federal Rules of Civil Procedure Rule 23(a)(1) ..........................................8

Federal Rules of Civil Procedure Rule 23(a)(2) ..........................................8

Federal Rules of Civil Procedure Rule 23(a)(3) ..........................................9

Federal Rules of Civil Procedure Rule 23(a)(4) ........................................10

Federal Rules of Civil Procedure Rule 23(b)(3) ........................................10

Federal Rules of Civil Procedure Rule 23(e)....................................... 1, 7, 11

Federal Rules of Civil Procedure Rule 23(e)(2) ........................................12

**Other Authorities**

*4 Newberg on Class Actions* § 11.41 .......................................................22

*Manual for Complex Litigation* § 21.62 .............................................. 12, 22

*Manual for Complex Litigation* § 21.632 ................................................12

*Manual for Complex Litigation* § 21.632 (2004).......................................7

*Quintero v. Mulberry Thai Skills, Inc.*,

    2008 U.S. Dist. LEXIS 84976, at *8 (N.D. Cal. Oct. 22, 2008) ...........8

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff MARTIN MARTINEZ SOTO, an individual ("Plaintiff"), on behalf of himself, and on behalf of all persons similarly situated, through his attorneys of record ("Class Counsel") submits this Motion for Preliminary Approval of Class Action Settlement regarding the allegations in Plaintiff's Complaint (the "Lawsuit"), which asserts claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA"). Plaintiff and Defendant O'REILLY AUTO ENTERPRISES, LLC ("Defendant") (collectively with Plaintiff, the "Parties") reached an agreement to settle the Lawsuit. Under Federal Rule of Civil Rule ("FRCP") 23(e), Plaintiff asks this Court for its preliminary approval of the Parties' "Joint Stipulation of Class Action Settlement and Release of Claims" ("Settlement" or "Settlement Agreement"), which is concurrently submitted as Exhibit 1 to the Declaration of Kelsey M. Szamet ("Szamet Decl.").

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### 1.    Filing of the Complaint

Plaintiff applied, was hired and performed work for Defendant in California from February of 2016 through March of 2019 as a non-exempt hourly employee with the title of "auto parts specialist."  Szamet Decl., ¶ 4.

On January 31, 2020, Plaintiff filed his Complaint against Defendant in the United States District Court for the Central District of California, alleging two causes of action as putative class claims under the FCRA. (ECF No. 1). The claims currently pending in the Lawsuit include the following: (1) failure to make proper disclosures to obtain proper authorizations in violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681b(b)(2)(A)(i), and (2) failure to obtain valid authorizations before procuring checks in violation of the FCRA 15 U.S.C. §1681b(b)(2)(A)(ii).  Plaintiff contended that during the relevant period, Defendant has had a consistent policy of requiring Plaintiff and proposed FCRA Class

Members[1] to execute a standard online employment application form ("standard FCRA form") permitting Defendant to obtain a consumer report verifying the applicants' background and experience.  Plaintiff alleges that Defendant's form was a "standalone" document that included a liability waiver and included references to rights under other state laws inapplicable to the applicant.

After meeting and conferring, Defendant produced a declaration signed by Defendant's Director of Talent Acquisition.  Szamet Decl., ¶ 5.  This declaration satisfied Plaintiff's Counsel that the alleged liability waiver referenced in the complaint was not included in the same document as the FCRA disclosure.  Szamet Decl., ¶ 6.  As such, Plaintiff filed a First Amended Complaint which removed the allegations regarding a waiver and limited the factual basis to the allegation that Defendant's FCRA disclosure form violated Plaintiff's and all other applicants' rights because in addition to the disclose itself it also referred to applicant's rights under state laws inapplicable to the job applicant.  ECF No. 15; Szamet Decl., ¶ 7.  Plaintiff further alleged that the inclusion of both federal and state disclosures violates the "clear and conspicuous disclosure" requirement in 15 U.S.C. § 1681b(b)(2)(A)(i).  Szamet Decl., ¶ 8.

## 2. **Mediation**

After the pleadings were settled and the matter was at issue, the Parties began to engage in formal discovery to understand the nature of the allegations and the scope of potential liability. Szamet Decl., ¶ 9.  Defendant provided Plaintiff's counsel with documents and pertinent data for the FCRA Class Members so that the Parties could fully investigate the claims at issue and understand their strengths and weaknesses. Szamet Decl., ¶ 10.

On January 13, 2021, the Parties attended private mediation with Tripper Ortman, a well-regarded and experienced employment class action mediator with

---

[1]    "FCRA Class Members" means all employees in the United States who completed O'Reilly Auto Enterprises, LLC's disclosure, authorization, and digital signature forms in its job application and for whom a consumer report was procured during the Class Period.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

specific expertise mediating these types of claims. Szamet Decl., ¶ 11. Although a settlement wasn't reached that day, the Parties continued their settlement efforts post-mediation with the aid of Mr. Ortman and were able to reach a proposed class action settlement. *Id.* The Parties jointly filed a notice of settlement on February 27, 2021 (ECF No. 43) notifying the Court that an agreement in principle to fully resolve this Lawsuit in its entirety was reached, subject to the Parties entering into a more comprehensive written settlement agreement, which was memorialized and executed on November 12, 2021, now submitted to this Court for preliminary approval. *Id.*

### 3.  <u>Preliminary Approval</u>

On October 15, 2021, the Court issued a Scheduling Notice and Order, vacating the pretrial conference and trial date and setting Plaintiff's deadline to file his Motion for Preliminary Approval for November 22, 2021. (ECF No. 50.)

> The operative complaint identified a class defined as:
> all employees in the United States who filled out O'REILLY AUTO ENTERPRISES, LLC's standard FCRA disclosure form that contains extraneous information at any time during the period beginning five (5) years prior to the filing of this action to the present.

ECF No. 15, ¶ 9.

The settlement class, which includes approximately 169,383 FCRA Class Members, is defined as:

> all employees in the United States who completed O'Reilly Auto Enterprises, LLC's disclosure, authorization, and digital signature forms in its job application and for whom a consumer report was procured during the Class Period.

*See* Szamet Decl., Exhibit 1, Settlement at § I(11).

The "Class Period" is January 31, 2015 to February 17, 2021. *See* Settlement, § I(8). While the class start period is the same for both the settlement class and the complaint (5 years prior to the filing of this action), the end period has been narrowed

to end on February 17, 2021.

## III.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

### 1.    Monetary Recovery

The Settlement Agreement provides a maximum recovery of $950,000.00 (the "Maximum Settlement Amount"). Settlement at § I(15). If the Court approves the Settlement, the following estimates the breakdown of payments from the Maximum Settlement Amount:

- $495,044.36 for estimated settlement funds to the settlement class (the "Net Settlement Amount");
- $197,455.64 for administration costs regarding the Settlement;
- $7,500.00 for a Service Award to Plaintiff; and
- $237,500.00 for attorneys' fees and $12,500 in litigation costs (the "Class Counsel Award").

*Settlement* at § III(15); Szamet Decl., at ¶ 12.

The amount of the Net Settlement Amount is contingent on the number of Participating FCRA Class Members. Szamet Decl., ¶ 13. Based on Defendant's class data, Defendant has determined that there are 169,383 FCRA Class Members. Szamet Decl., ¶14. Based on this data, the Parties anticipate the approximate gross payment per class member on average will be $5.61 with an approximate net payment on average of $2.92.[2] Szamet Decl. ¶ 15.

This is a non-reversionary, total payout Settlement. Settlement III(15). Any funds remaining in the Maximum Settlement Amount due to uncashed Settlement checks (after a 160-day negotiability period) will be remitted to the United Way, a 501c(3) non-profit

---

[2]    To ensure the FCRA Class Members are adequately compensated, the Maximum Settlement Amount may be increased if data reflects the total number of FCRA Class Members is more than 10% above 169,383. Settlement at § III(26) ("To the extent the number of FCRA Class Members increases beyond 169,383 by more than 10%, Defendant shall have the option to increase the Maximum Settlement Amount by a proportionate amount beyond the 10% increase…Defendant shall provide written notice to Plaintiff's counsel of its decision whether to increase the Maximum Settlement Amount pursuant within ten (10) days of the Settlement Administrator's confirming the number of FCRA Class Members with all counsel"); Szamet Decl., ¶ 16.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

organization. Settlement at § III(18).

Participating FCRA Class Members (*i.e.*, those who do not opt of the Settlement) wanting to participate in the Settlement *need not do anything*. *See* Settlement at §§ I(6); (17), ; *see* Proposed Class Notice, attached as Exhibit A to the Settlement Agreement. Individuals in the settlement class who do not want to participate in the Settlement may submit to the Settlement Claims Administrator a Request for Exclusion. Settlement, §§ I(6) and (23); III(11); Proposed Notice, pp. 3-4.

### 2.    The Release

FCRA Class Members will release Defendant and others from "any and all claims arising out of the allegations made in the operative complaint on file in the Action, or that could have arisen based on the facts alleged in the Action, including, but not limited to, claims arising from the procurement of background checks, reference checks, investigations, and/or consumer reports or investigative consumer reports of any kind by any of the Released Parties, and any other claims for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, et seq., (including 15 U.S.C. § 1681n and 1681o) or related federal, state, and/or local laws, including the California Consumer Reporting Agencies Act, the California Investigative Consumer Reporting Agencies Act, and California Business and Professions Code § 17200, et seq., whether willful or otherwise, for declaratory, injunctive and equitable relief or restitution, statutory damages, actual and compensatory damages, punitive damages, and costs and attorneys' fees, during the Covered Period." Settlement at §I(21).

The release is narrowed to the facts and claims arising out of the operative complaint. Szamet Decl., ¶17. A settlement agreement may release claims that are "based on the identical factual predicate as that underlying the claims in the settled class action" even though the claims were "not presented and might not have been presentable in the class action" at the time. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Where a proposed release "track[s] the breadth of Plaintiff's allegations in the action and the settlement does not release unreleased claims that

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

class members have against defendants," the identical factual predicate doctrine is satisfied and the release is appropriate. *See Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011).

### 3.  The Settlement Mechanism and Administration

The Parties met and conferred regarding a third-party settlement administrator to administer the Settlement claims process. Szamet Decl., ¶18. Plaintiff obtained administration bids from several third-party settlement administrators including ILYM Group, Inc., Phoenix Class Action Administration Solutions, and CPT Group Class Action Administration. *Id*. ILYM submitted an email notice bid for $216,723.96.  Id. The Parties agreed to use ILYM Group, Inc. to administer the Settlement notice process for email notice with Defendant paying $19,268.32 of the administration cost outside of the settlement fund. Szamet Decl., ¶ 19; Settlement at § I(27).[3]  The cost to be paid form the Maximum Settlement Amount is therefore $197,455.64.  Settlement at § III(15).

The Settlement Administrator will send the FCRA Class Members a Class Notice explaining the terms and conditions of the Settlement. Settlement at § III(7). (A copy of the proposed Notice is attached the Settlement as Exhibit A). After the Class Notice is mailed, FCRA Class Members will have 60 days to object to, or opt out of, the Settlement. Settlement at §§ I(24); III(11)-(12). The Settlement further provides it shall become effective only after the Court holds a final "fairness" hearing and finally approves the Settlement. Settlement at § I(2). The proposed Class Notice advises the FCRA Class Members about the fairness hearing

---

[3]   The bids included several different options to provide notice such as standard mailed notice, mailed postcard, and email.  Ultimately, the Parties agreed to select the ILYM bid for email notice with Defendant paying $19,268.32 of the administration cost outside of the settlement fund.

Since Defendant's FCRA form was completed online, Defendant has email addresses for every individual in the class. To the extent any addresses are no longer valid, the administration bids provide that the settlement administrator will send a postcard to that individual.  This form of notice administration makes the most sense in these circumstances because doing a standard multi-page mailed noticed was extremely expensive.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

and their opportunity to attend and be heard. Ex. A to the Settlement [Class Notice] at pp. 4-5. At the fairness hearing, the Parties will be prepared to address any concerns raised by FCRA Class Members or the Court, and the Court will therefore have a second, more comprehensive opportunity to review and consider the Settlement, as well as any objections to the Settlement.

## IV.    THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT

Class actions are generally subject to a "strong judicial policy" favoring settlement. *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)). Under Rule 23 (e), class action settlements are subject to court approval.

Courts evaluate class action settlements in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage, courts conditionally certify settlement classes, preliminarily approve settlements pending final fairness hearings, and authorize distribution of notices regarding proposed settlements. *Id.* (citations omitted). *See also Manual for Complex Litigation* § 21.632 (2004) (summarizing "preliminary fairness review"). The second stage involves a fairness hearing occurring well after notice is provided to the class, thus allowing time for putative class members to submit claims, objections, or requests to opt out. The court then decides if the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the underlying dispute. *Id.* at 659 (citations omitted).

For the reasons set forth below, Plaintiff submits: (a) a settlement class should be conditionally certified; (b) the Settlement should be preliminarily approved as fair, reasonable, and adequate; and (c) the Notice should be distributed to the Settlement Class.

### 1.    The Settlement Class Should be Certified

To facilitate the Settlement, the Parties respectfully ask the Court to conditionally certify the following Settlement Class under FRCP 23(e):

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

all employees in the United States who completed O'Reilly Auto Enterprises, LLC's disclosure, authorization, and digital signature forms in its job application and for whom a consumer report was procured during the Class Period (namely, January 31, 2015 to February 17, 2021).[4]

Settlement at §§ I(8) and (11). The Parties agree, but only for purposes of the Settlement, the criteria for certifying a settlement class are satisfied. *Settlement* at § II(1); Szamet Decl., ¶20.

        a.     All Four FRCP 23(a) Criteria are Met.

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, there are approximately 169,383 FCRA Class Members. Szamet Decl., ¶21; Settlement at § III(26). Consequently, numerosity is easily satisfied.

***FRCP 23(a)(2): There are questions of law or fact common to the Class.*** The commonality requirement is liberally construed. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (concluding Rule 23(a)(2) is "permissively" construed). The class' claims must share substantial issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with

---

[4] Under the FCRA, claims must be filed within the earlier of (1) "2 years after the date of discovery by the plaintiff of the violation that is the basis" for the FCRA claim, or (2) "5 years after the date on which the violation that is the basis for such liability occurs," without respect to the plaintiff's knowledge of the violation. 15 U.S.C. §§1681p (1)-(2). A plaintiff discovers facts giving rise to a claim when he or she learns the defendant procured a background report after using an allegedly deficient disclosure form. *Wirt v. Bon-Ton Stores, Inc*., 134 F. Supp.3d 852, 858–59 (M.D. Pa. 2015); *see also Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL 1071569, at *6 (E.D. Va. Mar. 15, 2016); *Moore v. Rite Aid Headquarters Corp*., No. 13–1515, 2015 WL 3444227, at *8 (E.D. Pa May 29, 2015). Here, the Class Period is premised upon the broader 5-year statute of limitations.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

disparate legal remedies within the class" suffices. *Hanlon,* 150 F.3d at 1019.

Under the FCRA, an employer, or prospective employer, cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless ... a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). Here, the FCRA Class Members are all individuals who, between January 31, 2015 and February 17, 2021, in connection with their application for employment with Defendant, completed Defendant's standard form purporting to authorize a consumer report verifying their background and experience. Szamet Decl., ¶ 22. Based on these common factual and legal issues, the Parties submit sufficient commonality exists. *Id*.

**FRCP 23(a)(3): Plaintiffs' claims are typical of the class' claims.** As with commonality, the typicality standard is "permissive[ly]" applied. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020). More specifically, it is satisfied when a class representative's claim is "reasonably coextensive with those of absent class members; they need not be substantially identical." *Id*.

Plaintiff alleges that on or about February of 2016, he was required to digitally sign a standardized online employment application form to permit Defendant to obtain consumer reports to verify his background and experience. Szamet Decl. ¶ 23. Plaintiff further alleges the standardized form was not merely a disclosure; it included a liability release stating: "I also release O'Reilly and its representatives, as well as former employers, from any liability for damage arising from any such investigation." (ECF No. 15-1, Ex. 4, p. 2, ¶2.) According to Plaintiff, Defendant required all applicants to complete the same form that violated the FCRA's prohibition against including extraneous information in a required disclosure. (ECF

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

No. 15, ¶ 21.) Although Defendant does not admit these allegations, for purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion sufficient typicality exists. Szamet Decl., ¶ 24.

**FRCP 23(a)(4): Plaintiff and Class Counsel will fairly and adequately protect the class' interests.** Courts have interpreted this requirement as posing two questions: whether the class representative and his counsel (1) have conflicts of interest with putative class members, and (2) will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases). Plaintiff and Class Counsel do not have interests antagonistic to those of the Settlement Class. Szamet Decl., ¶25. To the contrary, Plaintiff shares the same interest—*i.e.*, recovering damages resulting from alleged violations of Defendant's FCRA obligations. *Id*. Moreover, Class Counsel have extensive experience prosecuting similar such class actions. Szamet Decl., ¶33. Kingsley & Kingsley is experienced in prosecuting employment and consumer matters, and the firm has focused its practice since 2000 on complex litigation including wage and hour and consumer class actions. (*Id.*) Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Eastern, Central, and Southern California. (*Id.*) A list of representative cases that Kingsley & Kingsley has handled is included in the accompanying declaration of Kelsey M. Szamet. Thus, Plaintiff and Class Counsel are adequate representatives for the FCRA Class Members. The firm has diligently and aggressively pursued this action. After factoring in the risks discussed herein, Class Counsel believes that the proposed settlement is fair and reasonable.

b.    The FRCP 23(b)(3) Criteria are Met.

To certify a class under FRCP 23(b)(3), a court must find (1) common questions of fact or law predominate over questions affecting individual members of the proposed class, and (2) a class action is a superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3). The Settlement easily meets these criteria.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

***The predominance requirement is met.*** Predominance "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

Predominance is readily met because, as in numerous other class actions, Plaintiff's claim is premised in his allegation Defendant maintained a uniform policy of providing the Settlement Class with a standardized form facially violating the FCRA. (ECF No. 1, ¶¶ 20-21.) Plaintiff's claim is based on factual and legal questions about Defendant's policy that are not only common to the Settlement Class, but predominate under FRCP 23 (e). Szamet Decl. ¶ 26. These aspects of the case strongly support a finding that the predominance requirement is satisfied. Szamet Decl., ¶ 27. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d 1053, 1068 (N.D. Cal. 2007); *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009).

***Superiority is met.*** Whether a class action is a superior method of adjudicating a controversy involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon,* 150 F.3d at 1023. The circumstances here are comparable with those involving the Las Vegas Sands' former casino employees who sought damages for their employer's failure to provide a statutorily required 60-day notice before closure. When affirming the district court's approval of a class action settlement, the Ninth Circuit stated:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some

11
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

> - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a situation, superiority is "easily satisfied." *Id.* For purposes of approving the Settlement, Plaintiff submits superiority is equally satisfied. Szamet Decl., ¶ 28.

### 2.    <u>The Proposed Settlement is Fair, Just and Adequate.</u>

Courts weigh several factors when determining if a settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2). *Manual for Complex Litigation* § 21.62. The inquiry has been summarized as follows:

> Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.

*Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination about fairness, reasonableness, and adequacy. Instead, the key question is whether the Settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus, the inquiry is if the Settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to the Settlement Class informing them about the Settlement. *Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003). *See also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321.

        a.    The Settlement is Fair.

**Fairness of distribution among FCRA Class Members.** The Settlement is fair because the basis for recovery is the same for each FCRA Class Member. Szamet Decl., ¶ 29. All individuals comprising the Settlement Class are eligible to receive individual payments from the Net Settlement Amount, and each FCRA Class member will be bound by the same release. *Id*.

**Fairness of proposed attorneys' fees and expenses.** The allocation of the Maximum Settlement Amount between FCRA Class Members and Class Counsel is also fair because Class Counsel may seek to recover no more than one-third of the Maximum Settlement Amount in fees. Szamet Decl., ¶ 30.

The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. *Id* Szamet Decl., ¶ 30. Furthermore, the fee request is in line with other attorneys' fees awards for similar actions, particularly when class members do not have to allege or prove they suffered injuries. *Id*.

In class actions, courts have approved attorneys' fee requests couched as a percentage of the "common funds" created by settlements. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund approach "spread[s] litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Courts have long recognized that, when attorneys' efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have an equitable right to be compensated from that fund for their successful efforts in creating it. *See, e.g*., *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). "The common fund doctrine

provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008). This doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund, those who benefitted from the fund would be unjustly enriched. *Boeing*, 444 U.S. at 478. To prevent this unfair result, courts exercise their inherent equitable powers to assess attorneys' fees against the entire fund, thereby spreading the cost of those fees among all those who benefitted. *Id.*

Moreover, when deciding fee awards, several courts have expressed frustration with an alternative "lodestar" approach, which usually involves wading through voluminous and often indecipherable time records. Commenting on the lodestar approach, in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989), Chief Judge Marilyn Hall Patel wrote:

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the [lodestar] analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

The common fund approach is preferable to the lodestar because it: (1) aligns the interests of class counsel and absent class members; (2) encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable,

14

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

settlement; and (3) reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Accordingly, courts routinely use the common fund approach when determining fee awards accompany class action settlements (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 37879 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

According to *Newberg on Class Action* § 14:6 (4th ed. 2008): "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." Historically, courts have awarded fees ranging between 20% and 50% of the common fund. *Id. See also In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Class Counsel's application for one-third of the Maximum Settlement Amount is thus within the range of reasonableness and fair.

The typical range of acceptable attorneys' fees in the Ninth Circuit is up to 33.33% of the total settlement value *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (1998); *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009).

Class Counsel requests a fee award in the amount of $237,500.00, which represents 25% of the $950,000.00 common fund. Szamet Decl., ¶ 31. Class Counsel's application for an award of attorneys' fees is reasonable and fair. *Id.* This litigation resulted in the creation of a common fund for the Class, namely a non-reversionary settlement fund of $950,000.00. *Id.* Because no FCRA Class Members will pay fees to Class Counsel for their efforts during the litigation, equity requires them to pay a fair and reasonable fee based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases

individually. *Id*. Class Counsel is therefore entitled to fees from the settlement fund as a whole. *Id*.

A lodestar cross-check will be provided at final approval. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 1050 (9th Cir. 2002) ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a perspective on the reasonableness of a given percentage award"). Szamet Decl., ¶ 32.

Kingsley & Kingsley is extremely experienced in prosecuting employment and consumer litigation, and the firm has focused its practice since the year 2000 on complex wage, hour, and working condition violations. Szamet Decl., ¶¶ 33-35. They are well-versed in employment class action litigation and have diligently and aggressively pursued this action. *Id*. Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Central, and Southern California. *Id*. Throughout the past decade, attorneys at Kingsley & Kingsley have also actively litigated countless wage and hour and consumer class actions. Szamet Decl., ¶ 34.

**The proposed Service Award is fair**. Fairness principles favor a $7,500.00 Service Award for Plaintiff, who prosecuted this action and assisted Class Counsel throughout the litigation of this matter. Szamet Decl., ¶36. Mr. Soto's time includes researching and identifying competent counsel with relevant expertise, providing information to Class Counsel regarding the claims at issue, compiling documents, conducting several meetings and telephone conferences with his attorneys to discuss the status of the case and the theories of liability, and reviewing all relevant case documents. *Id*. *League of Martin v. City of Milwaukee*, 588 F. Supp. 1004, 1024 (E.D. Wis. 1984), (concluding it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit). Moreover, Plaintiff incurred personal risk by bringing the Lawsuit; he could have been responsible for Defendant's costs, and his potential employment opportunities may have been impacted by his public prosecution of the Lawsuit.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Szamet Decl., ¶ 37; *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (where defendant prevailed at trial, named plaintiffs were found to jointly and severally liable for defendant's attorneys' fees). For these reasons, the Service Award is fair.

b.      The Settlement is Reasonable.

While Plaintiff maintains his confidence in Defendant's liability for violation of the FCRA on two separate grounds, Plaintiff must acknowledge that Defendant's likely arguments posed significant risks, including the prospect that a class might not be certified, or a certified class may be significantly smaller than proposed. Szamet Decl., ¶ 38. In the Lawsuit, of particular importance to determining the reasonableness of the Settlement are the significant liability questions regarding purported violations of the FRCA.

Defendant likely would have advanced an argument that Plaintiff lacked standing because he did not suffer, or allege, a concrete injury under the Supreme Court's *Spokeo* decision. Szamet Decl., ¶ 39.

Spokeo, Inc. operated a website that provided information about individuals such as contact data, marital status, age, occupation, and certain types of economic information. *Spokeo, Inc. v. Robins* (2016) 136 S.Ct. 1540, 1546. Plaintiff Thomas Robins sued Spokeo alleging that the company willfully violated the FCRA by publishing false information about him on the website. (*Ibid.*) The District Court initially denied Spokeo's motion to dismiss the complaint for lack of jurisdiction, but later reconsidered and dismissed the complaint with prejudice finding that Robins had not "properly pled" an injury in fact, as required by Article III. (*Ibid.*) The U.S. Court of Appeals for the Ninth Circuit reversed and held that, although the district court could reconsider its ruling, the allegation of a violation of a statutory right is sufficient injury-in-fact to confer standing. (*Ibid.*)

The United States Supreme Court vacated and remanded. (*Id.* at 1550.) The Court concluded that standing requires "an invasion of a legally protected interest

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  that is concrete and particularized and actual or imminent, not conjectural or

2  hypothetical." (*Id*. at 1548.)

> In examining the standard to establish "concreteness", the Court stated:
> Robins cannot satisfy the demands of Article III by alleging a bare
> procedural violation. A violation of one of the FCRA's procedural
> requirements may result in no harm. For example, even if a consumer
> reporting agency fails to provide the required notice to a user of the agency's
> consumer information, that information regardless may be entirely accurate.
> In addition, not all inaccuracies cause harm or present any material risk of
> harm. An example that comes readily to mind is an incorrect zip code. It is
> difficult to imagine how the dissemination of an incorrect zip code, without
> more, could work any concrete harm.
>
> *Spokeo, supra*, at 1550.

11    Because the Court held that the standing principles of Article III mean that

12  a plaintiff cannot bring a claim that alleges a bare procedural violation, in

13  determining whether the plaintiff proved that an injury in fact existed, the lower

14  court must examine the elements of injury-in-fact analysis. (Ibid)  Because the

15  appellate court in this case failed to do so, the Court remanded the case for further

16  consideration.  Because the Ninth Circuit failed to consider both aspects of the

17  injury-in-fact requirements -- an injury in fact must be both concrete and

18  particularized, but the Ninth Circuit's observations concerned only

19  "particularization" -- its Article III standing analysis was incomplete. (Ibid.)

20    Very recently on June 25, 2021, the U.S. Supreme Court reversed a Ninth

21  Circuit decision which affirmed a class action award of approximately $40 million

22  in statutory and punitive damages to a class of 8,185 individuals against

23  TransUnion for alleged violations of the FCRA. *TransUnion LLC v. Ramirez*

24  (2021) 141 S.Ct. 2190.  In *TransUnion*, the Court affirmed and strengthened its

25  decision in *Spokeo*.  Applying the *Spokeo* holding that a mere procedural violation

26  of a statute alone does not confer Article III standing, in *TransUnion* the Court held

27  that 6,332 of the putative class members did not have standing to bring a suit for

28  damages against TransUnion because they failed to demonstrate that they suffered

a concrete harm as a result of TransUnion's decision to place an Office of Foreign
Assets Control (OFAC) Alert on their credit files indicating that the plaintiffs'
names were a potential match to OFAC's list of terrorists, drug traffickers, and
other serious criminals. Given that the plaintiffs' claims were largely based on a
specific provision of the FCRA requiring consumer reporting agencies to "follow
reasonable procedures to assure maximum possible accuracy" in consumer reports,
this decision creates an additional obstacle for class action plaintiffs attempting to
enforce federal statutes.

At issue in *TransUnion* was whether the plaintiffs had Article III standing to
bring a suit for damages based on TransUnion's alleged failure to ensure the
accuracy of plaintiffs' credit files. The Supreme Court concluded that 1,853 of the
class members adequately demonstrated concrete reputational harm because
TransUnion provided misleading credit reports for those individuals to third-party
businesses, but reversed the Ninth Circuit's decision as to the 6,332 class members
whose credit files were not provided to third-party businesses.

The Court did so even though Congress had purposefully created a cause of
action under the FCRA for consumers to sue "[a]ny person who willfully fails to
comply with any requirement imposed under this subchapter" and recover actual
damages or statutory damages not less than $100 and not more than $1,000, as well
as for punitive damages and attorney's fees. Drawing heavily from its opinion in
*Spokeo*, however, the Court explained that Article III injury requirements are
necessary to establish standing—even when Congress has enacted legislation
suggesting that a procedural violation is sufficient. The Court also rejected the
plaintiffs' argument that TransUnion's statutory violations could subject them to
future harm, holding that the mere risk of future harm, without more, cannot supply
the basis for standing.

Notably, this decision further weakens the ability of class members to
establish standing based on a mere procedural violation and provides further

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

ammunition to defendants in FCRA class actions.  In other words, and critical to the claims at issue here, *TransUnion* suggests that class action plaintiffs in FCRA cases may no longer be able to rely exclusively on statutory violations in order to establish a valid cause of action against credit reporting agencies. Instead, plaintiffs must now demonstrate (1) that the statute was violated and (2) that the statutory violation gave rise the type of injury or harm which has historically constituted a valid basis for a lawsuit in the United States.

Because of the great uncertainty regarding Plaintiff's ability to establish standing, Plaintiff and his Counsel contend that the $950,000.00 Maximum Settlement Amount is reasonable. Szamet Decl., ¶ 40.

Defendant also likely would have advanced an argument that Plaintiff's claims were time-barred because he allegedly knew or should have known that a background check was conducted at the time he applied for employment with Defendant in February 2016, yet did not bring this case until 2020 (nearly four years after Defendant hired him).  Szamet Decl., ¶ 41.  *See, e.g.*, *Banga v. Equifax Info. Servs., LLC*, 473 Fed. App'x 712, 713 (9th Cir. 2012) ("The district court properly granted summary judgment [on the FCRA claims] on statute of limitations grounds because Banga failed to file her action within two years of when she knew or should have known that defendant disclosed her credit report to third parties for promotional or other improper purposes."). Because of the uncertainty regarding FCRA liability, the $950,000.00 Maximum Settlement Amount is more than reasonable. Szamet Decl., ¶ 42.

Risks and uncertainties are also present regarding damages. Szamet Decl., ¶43.  In particular, Plaintiff seeks statutory damages under the FCRA ranging between $100 and $1,000 per violation. *Id*. Defendant would have certainly argued the alleged violations were technical, and thus did not result in any injuries or damages. *Id*. For example, in *Hillson v. Kelly Services*, E.D. Mich. No. 2:15cv10803, 2017 WL 279814, at *7-8 (E.D. Mich. Jan. 23, 2017), the court preliminarily

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

approved a settlement awarding $19 to each class member[5] for an alleged FCRA standalone disclosure violation. In *Hillson*, the court assumed each individual class member would recover $100 at trial, and observed, "once the $100 award is discounted by the likelihood of success at trial (which is conceivably in the ballpark of 19%), the amount of recovery under the settlement appears reasonable." *Id.* at *7.

Here, applying the *Hillson* logic, the maximum recovery would have been approximately $3,218,277 (169,383 reports x $19). Szamet Decl., ¶44. It must be noted, *Hillson* pre-dates *TransUnion* so it seems reasonable to accept that a Court may likely further discount the award based on the likelihood of success of trial to the ballpark that is represented here of approximately $5-6 per report. Szamet Decl., ¶45.

Based on all of the above significant risk factors, the proposed settlement falls well above the approved discounted range for similar class settlements. Szamet Decl., ¶46.

Furthermore, while Class Counsel believe Plaintiff's claims are meritorious, they are experienced class action litigators, and understand the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many months or years. Szamet Decl., ¶47. Thus, an important factor courts consider when approving a class action settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice v. Civil Service Com'n,* 688 F.2d 615, 625 (9th Cir. 1982). More specifically, courts weigh the benefits of a proposed settlement against the expense and delay involved in achieving an equivalent, or more favorable, result at trial. *See, e.g., Young v. Katz,* 447 F.2d 431,433-34 (5th Cir. 1971). *See also* FRCP 1 (requiring a just, speedy, and inexpensive resolution of every action).

The "overriding public interest in settling and quieting litigation" is

---

[5] In *Hillson*, there were two subclasses; members of the subclasses received settlement payments of $41 and $14, respectively, for an average of $19 (based on the number of individuals in each subclass).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

"particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases). This public policy favoring class action settlements applies with particular force here because the Settlement provides Class Members substantial, prompt, and efficient relief.

            c.    The Settlement is Adequate.

     The adequacy of a class action settlement must be judged as "a yielding of absolutes and an abandoning of highest hopes ... . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice,* 688 F.2d at 634 (citation omitted). The Settlement is not to be judged against a speculative measure of what may have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998). Moreover, determining the adequacy of the Settlement "involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Manual for Complex Litigation* § 21.62. An additional consideration is that the Settlement provides for payment to now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

     Judged against these standards, the Settlement is more than adequate. The present value of the Settlement far exceeds what the Settlement Class would have likely received if the underlying claims were fully litigated. Szamet Decl. ¶ 48. Likewise, there was a high probability of drawn out litigation and risks the Settlement Class may not have prevailed. *Id.* For all of these reasons, the Court should preliminarily approve the Settlement.

*///*

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

### 3.    <u>The Notice Adequately Informs Class Members of the Settlement and Their Rights Thereunder.</u>

A copy of the Parties' proposed class notice is attached to the Settlement as Exhibit A. The Class Notice explains the claims in the Lawsuit, the essential terms of the settlement, that class members need to do nothing to recover under the Settlement, the procedures for requests to be excluded from the Settlement, and how to object to the Settlement. Szamet Decl., ¶ 49. The Class Notice also advises the FCRA Class Members about the fairness hearing, FCRA Class Members' rights with respect to that hearing, and how to get more information about the Settlement. *Id*.

The time period for submitting an opt out request from the Settlement is reasonable, as is the time for filing objections; the FCRA Class Members will have adequate time to (1) digest the information provided in the Class Notice, and (2) obtain answers to questions about the Settlement. *Id at* Szamet Decl., ¶ 49.

Accordingly, Plaintiff respectfully asks the Court to approve the proposed Class Notice and authorize the Settlement Administrator to send to the Settlement Class the proposed Notice.[6]

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully asks the Court to preliminarily approve the Settlement and Notice and authorize the Settlement Administrator to send to the Settlement Class the proposed Class Notice.

DATED: September 22, 2022          KINGSLEY & KINGSLEY, APC


By: /s/ Kelsey M. Szamet
     Kelsey M. Szamet

Attorney for Plaintiff
MARTIN MARTINEZ SOTO and the
Proposed Class

---

[6]    The Settlement Administrator shall be responsible for sending out compliant notices to all attorneys general of every state where FCRA Class Members reside according to Defendant's records pursuant to the Class Action Fairness Act ("CAFA")

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**